UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Case No. |
| Plaintiff, | ) | 14-cr-00085-JMH |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| WINONA JEAN COX, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*

This matter is before the Court upon Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial [DE 120] pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. The United States has filed a Response [DE 123], and the Court is adequately advised.

**I.**

Federal Rule of Criminal Procedure 29 provides that the Court must enter a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." "A judgment of acquittal is appropriate where the court determines, after reviewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lopez-Medina*, 461 F.3d 724, 750 (6th Cir. 2006) (citing *United States v. Humphrey*, 289 F.3d 372, 378 (6th Cir.

2002)). The Court does not "weigh the evidence, assess the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Id*. (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)). "The Government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *Id*. (citing *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995)). A reasonable doubt is one "based on reason which arises from the evidence or lack of evidence." *Jackson v. Virginia*, 443 U.S. 307, 318 n. 9 (1979).

Federal Rule of Criminal Procedure 33 provides that the Court "may vacate any judgment and grant a new trial if the interest of justice so requires." In evaluating a motion under Rule 33, the Court, "in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citing *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).

In order to convict Defendant of violating 18 U.S.C. § 287 as charged in Counts 1 through 4, the United States had to prove that (a) Defendant presented a false claim against the United States to the IRS, (b) that the claim was based upon a false material fact; and (c) that the Defendant knew that the claim

2

was false. With respect to the charge of violating 26 U.S.C. § 7212(a) in Count 5, the United States had to prove that (a) the Defendant knowingly tried to obstruct or impede the due administration of the Internal Revenue laws; (b) that the Defendant did so corruptly; and (c) that the Defendant knew of a pending IRS proceeding when she engaged in the conduct that impeded the IRS's ability to administer the Internal Revenue code. As set forth below, whether measured against Federal Rule of Criminal Procedure 29 or 33, the United States of America presented evidence sufficient for a rational trier of fact to find the essential elements of these crimes beyond a reasonable doubt and, having taken its own look at the evidence and the credibility of the witnesses, the Court concludes that the interest of justice does not require a new trial.

**II.**

With respect to Counts 1 through 4, Cox was charged with falsely claiming $477,000 in tax refunds in violation of 18 U.S.C. § 287 (R. 1). The elements of this crime are that Cox knowingly presented a false claim, that she knew the claim was false, and that the claim was material, i.e., capable of influencing the agency to which it was addressed. Defendant argues that the Government failed to meet its burden to demonstrate that Defendant knowingly filed false claims. She theorizes that there was simply no proof that Defendant

3

"knowingly filed the taxes while knowing that they were false" and that, in her view, the evidence shows only that Cox told Vivian Harris that she gave her tax preparer, Jackie Cornejo, three 1099-OID forms to use in the preparation of her tax returns for 2007. She claims that there was no evidence introduced to demonstrate where those materials came from, opening up the possibility that they had originated from Cornejo herself.

At trial, the jury saw Cox's 2005-2008 tax returns (Gov't Exhibits 1-4), and heard from IRS employee Shirley Ball that the four returns were physically or electronically signed by Cox, that they were physically mailed from her address or electronically filed using her PIN, and that they requested tax refunds of $477,000 based on 1099-OID documents. Michele Hood, Jeff Jacob, and Bob McKaveney testified that the financial institutions for which each worked had not issued the 1099-OID forms filed with Cox's returns and that the documents were counterfeit. The United States also presented evidence of very low balances in Cox's bank accounts at the time for which the 1099-OID forms purported to report interest and no evidence of investments or investment income which would have justified $477,000 in tax refund claims.

IRS employee Vivian Harris testified that Cox admitted on the telephone that she had researched 1099-OIDs and filed the

4

2007 tax return, and the jury saw Cox's six signed letters to Vivian Harris which admitted the same (Gov't Exhibits 23-25). IRS employee Shauna Henline testified and showed the jury Cox's two signed letters to the IRS Frivolous Returns Program in which she admitted researching 1099-OIDs and filing the 2005 and 2006 tax returns (Gov't Exhibits 16-17). Further, the jury heard from Ball that Cox electronically filed her 2008 tax return, without reference to a tax preparer, after she had spoken to Vivian Harris and learned that her 2007 tax return was considered frivolous [Gov't Exhibit 4].

Cox ignores the significant evidence concerning where those 1099-OID forms did *not* come from – the financial institutions which purportedly issued them. She does not account for the evidence which showed that, while she may have had bank accounts at those institutions, she did not have account balances which might have produced anywhere near the amount of interest indicated on the 1099-OID forms that she presented to the IRS in tax year 2007 or any other year for that matter. She theorizes that the jury could have concluded from the evidence that the forms came from Jackie Cornejo as easily as they might have come from her, but the evidence shows that Cox told Vivian Harris that she had researched the 1099-OID scheme herself, although she declined to name her source for her information about the scheme, and then submitted or authorized the submission of tax

5

returns/amended tax returns which relied on those forms. Her communications with the IRS reveal that not only did she claim to have done the research and purposefully filed tax forms using the 1099-OID forms, Cox never denied submitting the returns or authorizing the submission of the returns using the forms 1099-OID that were not issued by the financial institutions at which she held accounts and which names were listed on the forms.

Nor is it meaningful that, as Defendant insists, no one at the IRS would tell her what was wrong with the OIDs and that the government introduced no evidence as to where the OIDs originated or who prepared them, that there was evidence that Jackie Cornejo had been ordered by the IRS to cease making false 1099-OID forms, or that there was no proof that Defendant knew that Cornejo was engaged in that practice. Equally irrelevant is the fact that Walter Brown and Mark Allen did all of the talking in the in-person meeting with Vivian Harris. The evidence shows that Cox claimed tax knowledge greater than the IRS's knowledge and never blamed her tax preparer or anyone else for her returns.

The Court concludes that the evidence presented at trial was sufficient to sustain a conviction under 18 U.S.C. § 287. Specifically, Cox knowingly filed her 2005-2008 tax returns aware that those returns falsely claimed $477,000 in tax refunds using counterfeit 1099-OID forms, and that the four tax returns

were capable of influencing the IRS, all in violation of 18 U.S.C. § 287. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and relief is not warranted under Federal Rule of Criminal Procedure 29. Further, the Court finds no grounds to conclude that the interest of justice would require a new trial under Federal Rule of Criminal Procedure 33.

## IV.

The jury also found Defendant guilty of a violation of 26 U.S.C. § 7212(a), charged in Count 5 of the indictment, in which she was charged with knowingly and corruptly trying to obstruct administration of the tax code in order to secure an unlawful benefit while aware of a pending action by the IRS. Defendant argues that the United States failed to present sufficient evidence to sustain a conviction for violating 26 U.S.C. § 7212(a) because the Government did not prove that Defendant knew of a pending IRS investigation at the time that she cashed the refund check obtained after submitting her 2007 amended tax return and then transferred the money to the bank account of another entity of which she was a member. The Court disagrees and concludes that there was adequate evidence from which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.

7

She takes the position that the earliest evidence of a pending IRS investigation occurred with the March 26, 2009, phone call with Vivian Harris, which occurred over a month after she cashed the refund check that she obtained from the IRS and transferred the funds to Twin Bridge Holdings, LLC, and that the that she cashed the check and transferred those funds could not support a conviction for violating § 7212(a).  Even so, through the testimony of Department of Motor Vehicles employee Godwin Onodu, the United States presented evidence that Cox transferred the title to her automobile to Travelers Trust, a trust which she controlled, on March 31, 2009, less than a week after the March 26 telephone conversation in which Vivian Harris requested the return of the refund and warned Defendant of the possibility that her real and personal property could be seized to satisfy any amounts owed to the IRS.  The jury also heard the testimony of Fayette County Clerk Donald Blevins that Cox executed quitclaim deeds transferring her interests in three pieces of real property to GMRE Holdings Trust on April 9, 2009, within two weeks of her first conversation with Vivian Harris.  Indeed, the jury concluded that she violated § 7212(a) by taking these actions.  [*See* Verdict Form, DE 117.]  Thus, the Court need not decide whether the United States presented evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Cox knew of a pending IRS action at the time that she

8

cashed the refund check and transferred the proceeds into the name of another entity. There was evidence presented from which a reasonable trier of fact could and did conclude beyond a reasonable doubt that Cox knew of a pending IRS action at the time she transferred her automobile and her interest in the three pieces of real estate in order to impede or obstruct the due administration of the Internal Revenue laws after her telephone conversation with Harris.

Nor is the Court persuaded by Defendant's suggestion that this evidence was inadequate to support the conclusion that she corruptly tried to obstruct or impede the administration of the Internal Revenue laws through the transfer of the vehicle to GMRE Holdings or the transfer of her interest in real estate to Twin Bridge Holdings because the registration on the car was about to expire or because there is no evidence that GMRE Holdings did not "possess[] the Defendant's name." The Court instructed the jury that she might have thought she was guilty and tried to avoid punishment when she took these actions or that she might have made those transfers for some other reason. [DE 116 at 25, Page ID#: 440.] In other words, the jury knew that there might have been reasons to undertake those transfers which were legitimate and not in violation of § 7212(a), but it did not reach that conclusion.

9

Rather, evidence was presented that Cox transferred the vehicle and her interest in the real property after Harris requested that she repay the funds obtained from the refund and after Harris warned Cox that her personal assets could be seized to satisfy the amount owed to the IRS. Those facts, when coupled with evidence that Cox had already transferred the refund amount itself after requesting that refund based on returns prepared using fraudulent Form 1099-OIDs, present sufficient evidence from which a rational trier of fact could (and, in this instance, did) conclude, beyond a reasonable doubt, that Plaintiff knew of a pending IRS investigation when she took those actions and that she took those actions as part of an effort to obstruct the administration of the revenue laws in violation of § 7212(a). Relief is not warranted under Rule 29, nor does the interest of justice require a new trial under Rule 33.

**V.**

For all of the reasons set forth above, no relief is warranted under Federal Rules of Criminal Procedure 29 or 33.

Accordingly, **IT IS ORDERED** that Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial [DE 120] is **DENIED**.

This the 5th day of January, 2016.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

Case: 5:14-cr-00085-JMH-REW Doc #: 127 Filed: 01/05/16 Page: 11 of 11 - Page ID#: